## 5976. KNIGHT v. THE STATE.

1. An accusation under section 606 of the Penal Code, charging that the defendant did unlawfully "catch" shad fish with a net during the prohibited time, and not charging the distinct offense (also punishable under that section) of laying such nets, etc., was not supported by evidence that he left nets in the river, or was "shad fishing," at the place and during the prohibited time alleged, it not appearing that he actually caught any fish.

2. While the question of venue is always involved in a plea of not guilty, still the defendant has the right to raise the issue by a special plea denying the jurisdiction of the court.

3. There was evidence sufficient to establish the venue if the defendant had been charged with the offense which the proof tended to show.

DECIDED DECEMBER 22, 1914.

Accusation of misdemeanor; from city court of Brunswick—Judge Krauss. August 17, 1914.

*F. H. Harris, John T. Powell,* for plaintiff in error.

*Alfred H. Crovatt, solicitor,* contra.

WADE, J. The defendant was prosecuted on an accusation based on section 606 of the Penal Code of 1910, which provides that "there shall be a 'closed time' in the rivers in which shad are caught, of forty-eight hours, commencing at sunrise on Saturday morning of each week and ending at sunrise on Monday morning of the next week, during which 'closed time' no shad or other migratory fish shall be caught by nets, wires, pounds, or any other means whatever; neither shall such nets, wires, pounds, or other apparatus be left in said rivers during said 'closed time.'" The accusation charged that the defendant "unlawfully did catch shad fish with a net after sunrise on said 7th day of March, 1914, said day being Saturday and a 'closed time' for catching such fish, contrary to the laws of said State," etc. It will therefore be seen that the defendant was not charged with violating that part of section 606 which makes it a criminal offense to leave in rivers in which shad are caught nets, wires, pounds, or other apparatus used for catching this species of fish; but he was charged with actually catching "shad fish with a set net" after sunrise on a particular Saturday named. So that proof tending to show that the defendant had nets or other apparatus of this kind in the waters of the Altamaha river was insufficient to establish the charge that the defendant caught shad fish during the "closed time" with nets, wires, pounds, etc.

The testimony for the State shows that the defendant was seen on March 7, 1914, in a boat on the Altamaha river, apparently handling a fish net. The witness said: "I could only see the corks. They were large corks. I slowed down my boat, and this party started on up the river in front of us, and went on up the river in front of us, three or four miles, to Buck's lake. We followed and found the man in the boat was the defendant, Lonnie Knight. There I saw him take up two nets; that is, lift them out of the water. . . The place where we first saw the defendant referred to was in Glynn county, Georgia. This was about eight or nine o'clock Saturday morning." This witness further testified, on cross-examination, that he did not know where the line between Glynn and Wayne counties was located, but thought it was about a mile and a half above the railroad bridge. According to his testimony, just as the witness was going around the bend in the river from a mile and a half to a mile and three fourths above the bridge, he saw the defendant in a boat, two or three hundred yards further up the river. So that it appears to us to be somewhat uncertain whether the defendant was, according to this testimony, just about the point in the river where the Glynn and Wayne county line intersects with the Altamaha, or was a distance of from two or three hundred yards to one fourth of a mile beyond this point, and hence, under this testimony, at a point on the river between McIntosh and Wayne counties, where the river constitutes the boundary between these last-named counties. Wherever the defendant may have actually been, the evidence does not establish that he had *caught* any shad or other fish, or that he was catching or even attempting to catch any fish at the place which the State's witness declared was within the limits of Glynn county—where the defendant was first seen, and the only place at which the witness definitely alleged he had seen the defendant within the limits of that county. In fact, the State's witness did not swear positively that what he saw the defendant handling at the point a mile and a half to a mile and three quarters above the bridge, which he said was in Glynn county, was any kind of fish net or other apparatus for catching fish at all. He testified: "I can not say it was a fish net, I can not swear it was a shad net, and can not swear it was a trot line. I am not in position to swear what it was. I only saw the corks, which were large ones. One end of whatever it was was fastened to the branch

of a tree, and the other end was anchored out in the stream with a jug. The tree to which it was fastened was on the Glynn county side of the river. I never saw any fish. There were some nets set out at or near the railroad bridge, but I never saw Mr. Knight have anything to do with them. '. . I am sure that these nets—at the bridge—were in Glynn county." Nor did he or any one else testify that the defendant caught any fish or had any fish in his possession at any time. It is true the game warden testified that he had a warrant sworn out for the defendant, and that soon there-after the defendant called him up over the telephone "and admitted that he had done wrong, that he had been shad fishing that day in violation of the law, and that he was going to plead guilty." But this statement from the accused that he had been shad fishing "in violation of the law" does not amount to an admission that he had *caught* any shad in violation of the law, or with nets, but perhaps merely expressed the conclusion of the defendant that because he had been fishing for shad on that day, he had violated the law, and does not indicate whether he was fishing with the prohibited nets, etc., or not. This admission would have been valuable evidence if the defendant had been charged with the use of nets for the purpose of catching shad, but it did not amount to a confession that he had actually caught any shad, and in point of fact he was prosecuted for catching shad with nets, and not for leaving in the river nets or other apparatus designed for catching shad—an entirely different offense. The defendant absolutely denied, in his statement to the jury, that he fished at the time charged, but said that he went up to Buck's lake in McIntosh county for the purpose of taking up or removing certain nets, and not to fish, and claimed that these nets were set in the mouth of Buck's lake. There was no further evidence relating to the charge actually preferred, except that another witness testified that two miles up the river, above the bridge, he saw the defendant apparently pulling a net into a boat, and again saw the same person at Buck's lake raise two nets up out of the water and let them fall back into the water, apparently for the purpose of ascertaining if there were any fish in the nets; but this witness was unable to say positively that the defendant was even handling a net when he and the other witness first saw the defendant, and he positively testified that the defendant, when first seen handling what the two witnesses for the State sup-

posed to be a net, was up the river above the line between the counties of Glynn and Wayne. So it is apparent that there was no evidence whatever to establish the charge that the defendant did unlawfully catch shad or other fish with a net. Had he been charged with the offense of using 'a net for the purpose of catching fish on days prohibited by the statute, the evidence might possibly have authorized the verdict.

The evidence as to the venue was sufficient to establish that a crime was committed in Glynn county, since the principal witness for the State testified positively that the place where the defendant was first seen handling the net, or what the witness thought was a net,—which was attached to a tree on the Glynn county side of the river,—was within the limits of that county. There was apparently more definite evidence for the defendant tending to show that he was first seen at a point on the river where the Altamaha forms the boundary between Wayne and McIntosh counties, and *beyond* the point where this river first touches the county of Glynn, but the jury accepted the testimony of the witness for the State on this issue; and since, according to his evidence, the defendant was handling nets for the purpose of catching fish within the jurisdictional limits of Glynn county, the verdict would have foreclosed the question as to the venue, if the defendant had been prosecuted for the offense of leaving, during the closed time, certain nets in the waters of a river in which shad are caught. Section 23 of the Penal Code, relating to venue in cases where counties are divided by a stream of water, would not, it seems, apply, since no witness testified definitely that the handling of the nets was at any point on the Altamaha river where that river formed the boundary between McIntosh and Glynn counties.

While the evidence raises a grave suspicion that the defendant was at least endeavoring to catch shad in the waters of the Altamaha river during a "closed time," there is no direct evidence that he did actually catch any fish of this variety during the prohibited time, and the only evidence which can be relied upon to raise even a suspicion that he did is circumstantial, and does not exclude an equally reasonable hypothesis of innocence, presented by the statement of the defendant. We must therefore hold that the circumstances in evidence were not sufficient to demonstrate the guilt of the accused to the exclusion of any other reasonable hypothesis;

and since there was no direct evidence that the accused had either caught or endeavored to catch any shad or even had fish of any kind in his possession, the evidence was not sufficient to authorize the verdict of guilty.

While it was incumbent upon the State to prove the venue as well as every other material allegation in the accusation, the defendant had the right, under section 975 of the Penal Code, to raise this issue by a special plea, and the court therefore erred in striking the plea offered. Cases can be imagined where the withdrawal of the right to have this naked issue presented, free from the atmosphere surrounding an odious charge, might deprive the defendant of a substantial right. It is unnecessary to discuss the other points raised in the motion for a new trial; for, though the case must go back for a rehearing, it is safe to assume that the exact points will not again arise.

*Judgment reversed. Broyles, J., not presiding.*